Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Russell, S.J.

RALPH LEE JORDAN

v.  Record No. 061211  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    April 20, 2007
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Ralph Lee Jordan was convicted of possession with the intent to distribute a Schedule I controlled substance in violation of Code § 18.2-248, and felonious obstruction of justice in violation of Code § 18.2-460(C).  On appeal, Jordan claims that the evidence was insufficient to sustain both convictions.  We agree and will therefore reverse the judgment of the Court of Appeals of Virginia.

RELEVANT FACTS AND PROCEEDINGS

The relevant facts are not in dispute, as Jordan introduced no evidence at his bench trial in the Circuit Court of Henrico County on the charges at issue.[1]  On April 24, 2004 at approximately 4:10 a.m., a Henrico County police officer, F.P. Kern, stopped an automobile driven by Jordan after Officer Kern observed the vehicle crossing over and striking the double yellow line in the center of

---

[1]  Jordan was tried jointly with Curtis Wright, III, who was also charged with possession with the intent to distribute a Schedule I controlled substance.  At trial, Wright likewise presented no evidence.

the roadway several times. Officer Kern stopped his police vehicle behind Jordan's automobile and illuminated its interior with both his headlights and his spotlight. As Officer Kern approached the driver's side of Jordan's vehicle, he observed a passenger, later identified as Curtis Wright, III, lean over, use his left hand to open the front passenger door approximately two to three inches, and then drop a cylindrical object out of his hand onto the ground. Upon reaching the driver's side of the vehicle, Officer Kern detected the odor of alcohol on Jordan's breath and noticed that Jordan had "glassy eyes."

Officer Kern then approached the passenger side of the vehicle and found a small prescription bottle lying on the wet gravel just under the "rocker panel" of the front passenger door. The prescription bottle was dry, although the road was wet from a recent rain. Considering the bottle's location on the ground, Officer Kern believed the tires of Jordan's vehicle would have crushed it if the bottle had been there previously. Officer Kern opened the bottle and found "thirty tablets with nine pieces and powder." According to Officer Kern, the intact tablets "were marked on either side, with a flower or a wagon wheel type design." Based on his training and experience, Officer Kern suspected the tablets were a controlled

2

substance commonly known as "ecstasy." Subsequent testing by the Division of Forensic Science confirmed that the tablets were "3,4-Methylenedioxyamphetamine," i.e., ecstasy. Officer Kern asked Wright if he knew anything about the bottle. Wright responded that he did not, but admitted that he had just come from "a club."

After Jordan failed a variety of field sobriety tests, Officer Kern arrested Jordan for driving under the influence of alcohol. He arrested Wright for possession with the intent to distribute ecstasy. Incident to the arrests, Officer Kern searched Jordan's vehicle and found in the glove compartment what Officer Kern described as "a roll of money . . . rolled sequentially [in] fives, tens, twenties, and hundreds" and "held in place by a rubber band." The roll of cash contained a total of $3,400. When Officer Kern asked Jordan about the money, Jordan admitted that it belonged to him, but claimed "that he had his automobile dealer[']s license" and used the money to "purchase and deal automobiles." Officer Kern testified that he told Jordan the roll of money was evidence linking Jordan to the distribution of ecstasy.

Officer Kern placed the roll of money that he had recovered in between the two front seats of his police vehicle. With Jordan sitting in the front passenger seat,

3

handcuffed, and restrained by a seatbelt, Officer Kern then transported Jordan to the magistrate's office. Upon arriving at the magistrate's office, Officer Kern went inside to lock up his weapon and, while doing so, left Jordan alone in the vehicle. After Officer Kern removed Jordan from the vehicle and took him before the magistrate, the roll of cash fell from Jordan's pants. Jordan admitted taking the money from the police vehicle and told Officer Kern that he did so because he believed that the officer was going to steal the money.

Deciding to use more caution with Jordan, Officer Kern again handcuffed him.[2] According to Officer Kern, Jordan "stiffen[ed] his arms and began pulling away . . . any time[] that he had the opportunity." Officer Kern testified that he had to "forcefully put [Jordan's] arms behind his back, after pinning [Jordan] to the counter." While walking to the probable cause hearing and to his bond hearing, Jordan walked slowly and pulled away, requiring Officer Kern to pin Jordan against a door or wall several times. On the way out of the magistrate's office after the probable cause determination, Jordan stopped repeatedly, causing Officer Kern to bump into him. Officer Kern

---

[2] The record is not clear as to when Officer Kern had removed the handcuffs.

testified that, when he removed the handcuffs so that Jordan could be fingerprinted and photographed, Jordan put his hands "down the front of his pants and began playing with his genitalia." After Jordan refused three requests to remove his hands, Officer Kern forcibly did so. During the intake process, Jordan also refused to answer questions in a timely fashion, instead answering a question after three or four other questions had been asked.

The Commonwealth's only other evidence came from Michael J. Barren, an investigator with the Narcotics Unit of the Henrico County Police Department, who testified as an expert witness regarding ecstasy and how it is packaged and sold. Barren stated that ecstasy is "commonly referred to as club drugs" and is generally used in clubs that have dancing all night. According to Barren, a pill of ecstasy typically sells for approximately $20 to $25. Barren also testified that the bottle recovered by Officer Kern was approximately one-quarter full and that the quantity of pills in the bottle was not consistent with personal use. Finally, Barren opined the $3,400 in cash recovered by Officer Kern was representative of the sale of approximately 130 to 170 pills of ecstasy.

At the close of the evidence, Jordan moved to strike the evidence on both charges. The trial court denied the

motion and found Jordan guilty of possession of ecstasy with the intent to distribute and obstruction of justice. With regard to the latter offense, the trial court found that Jordan had impeded Officer Kern by taking the roll of money after Officer Kern had seized it. The trial court also denied Jordan's post-trial motion to dismiss the charges.

Jordan appealed his convictions to the Court of Appeals of Virginia. A three-judge panel of the Court of Appeals denied Jordan's petition for appeal for the reasons stated in its prior unpublished per curiam order. Jordan v. Commonwealth, Record No. 1642-05-2 (May 16, 2006). In that per curiam order, the Court of Appeals concluded that the fact-finder could reasonably have inferred from the evidence that the $3,400 represented proceeds from the sale of the ecstasy pills that were no longer in the bottle that Officer Kern recovered and that, consequently, Jordan and Wright jointly possessed the ecstasy. Jordan v. Commonwealth, Record No. 1642-05-2, slip op. at 3 (Feb. 15, 2006). The Court of Appeals also concluded that Jordan impeded Officer Kern by removing the $3,400 from the police vehicle and "by using force" to prevent Officer Kern from performing his duties and handcuffing Jordan. Id. Jordan appeals from the judgment of the Court of Appeals.

6

ANALYSIS

On appeal, Jordan challenges the sufficiency of the evidence to sustain each of his convictions. He first asserts that the evidence was insufficient to establish that he jointly possessed the ecstasy actually found in Wright's possession. Next, Jordan claims the evidence was insufficient to establish that he either threatened Officer Kern with bodily harm or used any force to impede the officer. We will address the issues in that order.

When the sufficiency of the evidence in a criminal case is challenged on appeal, this Court must view the evidence in the light most favorable to the Commonwealth and accord to it the benefit of all reasonable inferences fairly deducible from the evidence. Welch v. Commonwealth, 271 Va. 558, 561, 628 S.E.2d 340, 341 (2006); Walton v. Commonwealth, 255 Va. 422, 425-26, 497 S.E.2d 869, 871 (1998). We will not disturb a trial court's judgment on appeal unless it is plainly wrong or without evidence to support it. Code § 8.01-680; Walton, 255 Va. at 426, 497 S.E.2d at 871. However, "it is just as obligatory upon the appellate court, to set aside . . . the judgment of a court, when it is, in its opinion, contrary to the law and evidence, and therefore plainly wrong, as it is to sustain it when the reverse is true." Bland v. Commonwealth, 177

7

Va. 819, 821, 13 S.E.2d 317, 317 (1941); accord Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763 (2001); Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999).

To convict Jordan of possession of ecstasy with the intent to distribute, the Commonwealth had to prove beyond a reasonable doubt that Jordan was aware of the presence and character of the drug and that he consciously possessed it. See Walton, 255 Va. at 426, 497 S.E.2d at 871; Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). "An accused's mere proximity to an illicit drug, however, is not sufficient to prove possession." Walton, 255 Va. at 426, 497 S.E.2d at 872; accord Wilson v. Commonwealth, 272 Va. 19, 27, 630 S.E.2d 326, 330 (2006); Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986). Nor does an accused's ownership or occupancy of the premises or vehicle where an illegal drug is found create a presumption of possession. Walton, 255 Va. at 426, 497 S.E.2d at 872; Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983).

The Commonwealth did not, however, have to establish that Jordan actually possessed the ecstasy; proof of constructive possession is sufficient. See Wilson, 272

8

Va. at 26–27, 630 S.E.2d at 330; Walton, 255 Va. at 426, 497 S.E.2d at 872. Constructive possession may be established when there are "'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" Drew, 230 Va. at 473, 338 S.E.2d at 845 (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)). That an accused occupied or owned the premises or vehicle where a controlled substance was found is one circumstance that can be considered along with the other evidence in determining whether the accused constructively possessed the illegal drug. Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982); Gillis v. Commonwealth, 215 Va. 298, 301, 208 S.E.2d 768, 770–71 (1974). When, as here, a conviction is based on circumstantial evidence, the issue before us is not whether there was some evidence to support Jordan's hypotheses of innocence, but whether a reasonable fact-finder, upon consideration of all the evidence, could have rejected Jordan's theories in his defense and found him guilty beyond a reasonable doubt. See Hudson v. Commonwealth, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

9

The Commonwealth argues that there was sufficient circumstantial evidence from which a reasonable fact-finder could infer that Jordan was aware of the presence and character of the ecstasy and that the ecstasy was subject to his dominion and control. In support of this argument, the Commonwealth relies primarily on the $3,400 in cash found in the glove compartment of Jordan's vehicle, the manner in which the money was rolled, Jordan's acknowledgement that the money belonged to him, his subsequent taking of the money from the police vehicle after being informed it was evidence against him on the drug charge, Jordan's close proximity to the bottle of ecstasy when Wright opened the vehicle's door and dropped the bottle on the ground, Wright's admission that he had just come from "a club," and Barren's testimony about how ecstasy is packaged and sold and that it is "commonly referred to as club drugs." We do not agree with the Commonwealth's position.

The evidence did not establish either that Jordan was aware of the character and presence of the ecstasy or that the ecstasy was under Jordan's dominion and control. When Officer Kern stopped the vehicle, he observed only Wright making furtive movements. Wright admitted that he had been to "a club," but he did not indicate that Jordan

10

accompanied him to the club.  Other than the roll of money, the search of the vehicle and of Jordan's person did not reveal any other contraband or items associated with the distribution of controlled substances.  Even though Jordan admitted the cash belonged to him, it was rolled sequentially according to denominations rather than in amounts corresponding to the price of an ecstasy pill.  See Archer v. Commonwealth, 225 Va. 416, 417, 303 S.E.2d 863, 863 (1983) ("currency was grouped in amounts corresponding to the street price of a Preludin pill").

The Commonwealth argues on brief that the roll of cash was in denominations commonly used in drug transactions, but the record contains no such evidence. Admittedly, Jordan removed the money from the police vehicle, but he did so after Officer Kern told him the cash was evidence that would link him to the distribution of ecstasy.  Thus, as the Commonwealth recognizes on brief, Jordan could have stolen the roll of cash in order to hamper the prosecution of the drug charge against him irrespective of whether the money represented proceeds from the sale of ecstasy.

In sum, we conclude that the circumstantial evidence "at most, create[d] a mere suspicion.  'Suspicion, however, no matter how strong, is insufficient to sustain

11

a criminal conviction.'" Garland, 225 Va. at 184, 300 S.E.2d at 785 (quoting Stover v. Commonwealth, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981)). Thus, we hold that the evidence was insufficient, as a matter of law, to prove constructive possession of the ecstasy by Jordan. Upon consideration of all the evidence, a reasonable fact-finder could not have found Jordan guilty beyond a reasonable doubt. See Hudson, 265 Va. at 513, 578 S.E.2d at 785.

Turning now to Jordan's conviction for obstructing justice, we again conclude that the evidence was insufficient to sustain the conviction under Code § 18.2-460(C). Jordan was indicted for using threats of bodily harm or force knowingly to attempt to intimidate or impede a law-enforcement officer in the discharge of his duty "relating to a violation of or conspiracy to violate [Code] § 18.2-248 or [Code] § 18.2-248.1 (a)(3), (b) or (c) or any violent felony offense listed in subsection C of [Code] § 17.2-805." See Washington v. Commonwealth, 273 Va. ___, ___ S.E.2d ___ (this day decided) (discussing the elements of the offense set forth in Code § 18.2-460(C)). We disagree with the Court of Appeals' conclusion that Jordan's act of removing the roll of cash from the police vehicle and his conduct in the

12

magistrate's office and during the intake process amounted to the use of force knowingly to attempt to impede Officer Kern in the discharge of his duties.

In Ruckman v. Commonwealth, 28 Va. App. 428, 505 S.E.2d 388 (1998), the Court of Appeals stated that "obstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult but does not impede or prevent the officer from performing that task."  Id. at 429, 505 S.E.2d at 389. That statement undermines the Court of Appeals' decision in this case but is consistent with our explanation of what constitutes obstruction of justice:

> To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action and forcible or threatened means.  It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed.

Jones v. Commonwealth, 141 Va. 471, 478–79, 126 S.E. 74, 77 (1925) (citation and internal quotation marks omitted).

13

Contrary to the Commonwealth's argument, Jordan did not violate Code § 18.2-460(C) by removing the roll of cash from the police vehicle. Regardless of whether that action impeded Officer Kern in the discharge of his duties, it did not involve the use of force. The mere act of removing the roll of cash from its location between the seats in the police vehicle was not the type of "force" contemplated by Code § 18.2-460(C). See Black's Law Dictionary 673 (8th ed. 2004) (defining the term "force" as "[p]ower, violence, or pressure directed against a person or thing").

Similarly, we reject the Commonwealth's argument that the evidence concerning Jordan's conduct in the magistrate's office and during the intake process was sufficient to sustain his conviction for obstructing justice. Unquestionably, Jordan was less than cooperative and his conduct rendered Officer Kern's discharge of his duties more difficult, but Jordan's conduct again did not involve the use of force. Furthermore, it did not impede or prevent Officer Kern from performing his tasks. See Jones, 141 Va. at 479, 126 S.E. at 77 (throwing a bag of barley into a road in front of an officer's vehicle did not obstruct the

14

officer himself); <u>Ruckman</u>, 28 Va. App. at 429, 505 S.E.2d at 389.

Thus, we conclude that the evidence was insufficient, as a matter of law, to prove that Jordan obstructed justice in violation of Code § 18.2-460(C).[3]

CONCLUSION

For these reasons, we will reverse the judgment of the Court of Appeals and dismiss the indictments.

<u>Reversed and dismissed</u>.

---

[3] In contrast to the situation in <u>Washington v. Commonwealth</u>, 273 Va. at ___, ___ S.E.2d at ___, there was evidence in this case that Officer Kern was discharging his duties "relating to a violation of [Code] § 18.2-248." Code § 18.2-460(C). At the time Jordan allegedly obstructed justice, he had been charged with possession with the intent to distribute a Schedule I controlled substance.