COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Haley and Beales
Argued at Richmond, Virginia


KELVIN MAURICE BELTON

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1290-06-2                          JUDGE JAMES W. HALEY, JR.
                                                        OCTOBER 23, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

John B. Mann (John B. Mann, P.C., on briefs), for appellant.

Richard B. Smith, Special Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Kelvin Maurice Belton ("appellant") was convicted of possession of heroin with intent to

distribute, pursuant to Code § 18.2-248, and obstruction of justice, pursuant to Code

§ 18.2-460(C).[1]  The issue here for resolution is whether the Commonwealth's evidence of force

was sufficient to sustain a conviction for felony obstruction.  We conclude it was not, reduce the

conviction to one for a misdemeanor violation of Code § 18.2-460(A), and remand for

re-sentencing in accordance with our decision.

STATEMENT OF FACTS

On February 8, 2005, Officer Jack Larry and his partner, Officer Keith Shibley, both of

the Richmond Police Department, initiated a traffic stop of appellant's vehicle for driving with

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The relevant portions of the Code state as follows:  "If any person by . . . force
knowingly attempts to . . . impede a . . . law-enforcement officer, lawfully engaged in the
discharge of his duty . . . relating to a violation of or conspiracy to violate § 18.2-248 . . . he shall
be guilty of a Class 5 felony."

only one headlight.  Officer Larry testified that, during the course of his questioning appellant, he smelled the odor of marijuana and asked appellant to step out of the car, which appellant did.

Officer Larry then asked appellant "if he had any weapons on him."  Appellant stated he did not, and Officer Larry proceeded to conduct a pat-down search of appellant's person, during which he felt "a slight bulge in [appellant's] right pocket."  At that point, Officer Larry testified that they "stepped to the rear of the car and [] talked briefly about the marijuana.  [Appellant] stated that the marijuana was in the ashtray [and Officer Larry] asked [appellant] if he would empty his pockets."

Officer Larry then described the subsequent events as follows:

> [Appellant] reached in and pulled out the ID and some miscellaneous papers that were in his pocket.  And, he sat it down on the trunk of the vehicle.  It was at that time that he turned and immediately began to run eastbound . . . .

> \*       \*       \*       \*       \*       \*       \*

> Q.      All right.  Then what did you do?
> A.      I began to chase him.

> \*       \*       \*       \*       \*       \*       \*

> As we got between both of the houses I first encountered a fence.  And, as I chased [appellant] he attempted to jump the first fence but tripped up and fell.  [He] then popped back up as I am running towards the fence.

> \*       \*       \*       \*       \*       \*       \*

> [He] then got up and began to start running again.  It was at that time I saw [him] reach down towards his front and pop back up and made a throwing motion.  His entire body turned and made a throwing motion directly to the south of us.

> \*       \*       \*       \*       \*       \*       \*
> . . . We continued between the two houses until we came to the end of the fence, which [appellant] attempted to jump but didn't clear and actually ran through, stumbled again.

        *     *     *     *     *     *     *

. . . [H]e made an immediate right into the yard right next door where he had made the throwing motion, at which time I continued to chase him into that yard. And as we ran to the end of the yard we ran into another fence. It was at that time I made contact and was able to apprehend [appellant].

        *     *     *     *     *     *     *

Q. And at any time had you been saying anything to him?
A. Stop, stop running.
Q. . . . [W]hat was his conduct at that point when you came in physical contact with him?
A. I was able to get [appellant] to the ground. And, by that time my partner . . . had [caught] back up to us. And, we went to the ground. And, [appellant] refused to give us his hands. He was laying on his hands.
Q. Did you say anything to him?
A. Repeatedly we were ordering him to bring them behind his back and he refused.
Q. And, how did he refuse?
A. He had them locked under.
Q. Okay. And, what, if anything, was his other physical conduct other than refusing to give you his hands?
A. That's basically the extent of it.
Q. Did he struggle with you in any other way?
A. No, ma'am.

During cross-examination, Officer Larry further described that appellant was lying face down with his hands underneath him and he had "clinched up" and "wouldn't get his arms out from under him." Officer Shibley's testimony confirmed that Officer Larry repeatedly asked appellant to stop running and that the officers had to "strike" appellant in order to detain him.

Testifying in his own defense, appellant admitted running away from the police, and stated that "when I felt [Officer Larry] grabbing me at my back, well, I just tried to let my jacket come up and let the jacket hold my head. And that's when he grabbed me . . . ." Appellant also stated he "tried to come out of [his] jacket" in order to "shake the officer behind [him]." He

- 3 -

confirmed that, once the officers caught him, they "kept saying give us your arms" and that "[t]he only thing that [he] said was that I'm not moving."

On cross-examination, appellant answered affirmatively when asked if he "tried to get away by letting [his] jacket go" but denied that he threw anything as described by Officer Larry.

ANALYSIS

Appellant contends that the evidence of force was insufficient to sustain a felony obstruction conviction under Code § 18.2-460(C).[2]

I.

Both appellant and the Commonwealth rely upon Jones v. Commonwealth, 141 Va. 471, 126 S.E. 74 (1925), in support of their respective arguments. Jones, a passenger in a car pursued by the police, threw a 2-½ pound bag of barley out the window, causing the police vehicle to swerve.[3] When the car was stopped Jones was arrested without incident. The Court noted: "The sole contention of the Commonwealth is that in the act of throwing the bag of barley into the road lies the obstruction charged in the indictment." Id. at 478, 126 S.E. at 77.

The Court further reasoned:

> In view of the testimony of the accused that his intention in throwing the bag . . . was not to obstruct the officer, but to get rid of evidence which he was under the impression would convict him

---

[2] The Virginia Supreme Court recently distinguished the provisions of Code § 18.2-460(B) and Code § 18.2-460(C) in Washington v. Commonwealth, 273 Va. 619, 643 S.E.2d 485 (2007). The Court held that for a conviction under subsection C, the obstruction must be associated with the offenses there designated, which include Code § 18.2-248. In the instant case, appellant's petition for appeal was denied with regard to his conviction under that statute. Accordingly, with that predicate, "there is no significant difference between the elements of the offenses set forth in subsections B and C." Id. at 625, 643 S.E.2d at 488. Thus, a factual analysis of cases arising under subsections B or C is appropriate.

[3] The contents of the car ultimately included two 100 pound bags of sugar, and "a large amount of hops and yeast."

- 4 -

> if found in his car . . . does not demonstrate his [guilt] beyond a reasonable doubt.

Id. at 480, 126 S.E. at 77. In explaining its conclusion, the Court continued:

> To constitute obstruction of an officer in the performance of his duty, it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to "obstruct" ordinarily implies *opposition or resistance by direct action* and forcible or threatened means. It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed.

Id. at 478-79, 126 S.E. at 77 (emphasis added).

A parameter of obstruction under Code § 18.2-460(C) was recently addressed in Jordan v. Commonwealth, 273 Va. 639, 643 S.E.2d 166 (2007).[4] Jordan had been arrested and placed in a police car "in the front passenger seat, handcuffed, and restrained by a seatbelt." Id. at 643, 643 S.E.2d at 168. The police officer had placed a roll of cash discovered on Jordan between the two front seats of his car. When Jordan was removed from the police car the roll of cash fell from his pants. Jordan admitted taking it. The Court continued its summary of Jordan's actions thusly:

> Jordan "stiffen[ed] his arms and began pulling away . . . any time[] that he had the opportunity." Officer Kern testified that he had to "forcefully put [Jordan's] arms behind his back, after pinning [Jordan] to the counter." While walking to the probable cause hearing and to his bond hearing, Jordan walked slowly and pulled away, requiring Officer Kern to pin Jordan against a door or wall several times. On the way out of the magistrate's office after the probable cause determination, Jordan stopped repeatedly, causing Officer Kern to bump into him. Officer Kern testified that, when he removed the handcuffs so that Jordan could be fingerprinted and photographed, Jordan put his hands "down the front of his pants and began playing with his genitalia." After Jordan refused three

---

[4] Jordan was decided subsequent to the hearing in the trial court in this matter and the submission of briefs by counsel. However, both counsel addressed Jordan in oral argument before this Court.

requests to remove his hands, Officer Kern forcibly did so. During the intake process, Jordan also refused to answer questions in a timely fashion, instead answering a question after three or four other questions had been asked.

Id. at 643-44, 643 S.E.2d at 169. The Court concluded:

> The mere act of removing the roll of cash . . . was not the type of "force" contemplated by Code § 18.2-460(C) . . . [and] Jordan's conduct in the magistrate's office and during the intake process was [not] sufficient to sustain his conviction for obstructing justice. Unquestionably, Jordan was less than cooperative and his conduct rendered Officer Kern's discharge of his duties more difficult, but Jordan's conduct again did not involve the use of force. Furthermore, it did not impede or prevent Officer Kern from performing his tasks.

Id. at 648-49, 643 S.E.2d at 171-72.

In Jordan, the Court quoted as "consistent with our explanation of what constitutes obstruction of justice" the following language from our decision in Ruckman v. Commonwealth, 28 Va. App. 428, 505 S.E.2d 388 (1988): "'[O]bstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult but does not impede or prevent the officer from performing that task.'" Jordan, 273 Va. at 648, 643 S.E.2d at 171 (quoting Ruckman, 28 Va. App. at 429, 505 S.E.2d at 389).[5]

Parsing Jones and Jordan, we conclude that obstruction of justice, under Code § 18.2-460(B) or (C), occurs when, though less than a technical or actual assault upon an officer, force is used in opposition or resistance sufficient to impede or prevent a police officer from performing his duties.

---

[5] Ruckman dealt with a prosecution under Code § 18.2-460(A), not Code § 18.2-460(C) as was the issue in Jordan.

II.

Initially we note that Officer Larry smelled the odor of marijuana in appellant's car and appellant told him the marijuana was "in the ashtray." Thus, Officer Larry had probable cause to believe that appellant was violating Code § 18.2-250.1, possession of marijuana. It was at this point that appellant took flight, leading to the subsequent events set forth above. That flight and those events necessarily impeded Officer Larry in performing his duty. The issue then becomes: Did appellant's actions constitute sufficient *force* used in opposition or resistance to that performance?

We first conclude that appellant's reliance upon Jones is misplaced. There, the Commonwealth maintained that the sole "act of throwing the bag of barley" constituted the obstruction. Here, appellant likewise threw away the drugs on which his conviction for violating Code § 18.2-248 was based. However, he also did much more, and it is those subsequent actions that distinguish his actions from that sole act found insufficient in Jones. Further, in Jones the defendant's act was consistent with his expressed intent to "get rid of evidence." 141 Va. at 480, 126 S.E. at 77.

Here, appellant testified that the officers "kept saying give us your arms" and his response was "I'm not moving." This statement demonstrates an intent to obstruct not present in Jones. Finally, though appellant states on brief that the Commonwealth produced no evidence that he refused any commands by the officers, the record shows otherwise. Not only did appellant refuse commands to stop running, but he also refused commands, once caught, to give the officers his hands. These uncontested facts demonstrate appellant's intent to impede the officers.

Relying upon Jordan, appellant asserts that his conduct was not sufficient to constitute a use of "force" as defined by the statute. In Jordan, the Supreme Court held that "the type of 'force' contemplated by Code § 18.2-460(C)" was that which constituted "[p]ower, violence, or pressure directed against a person or thing." 273 Va. at 648, 643 S.E.2d at 171-72 (citing Black's Law Dictionary 673 (8th ed. 2004)). That Court described Jordan's conduct, as here relevant, as follows: "After Jordan refused three requests to remove his hands (from his pants), Officer Kern forcibly did so." Id. at 644, 643 S.E.2d at 169. In the instant case, appellant's conduct was described in the following exchange: A: "Repeatedly we were ordering him to bring (his hands) behind his back and he refused . . . he had them locked under. Q: . . .what, if anything was his other physical contact other than refusing to give you his hands? A: That's basically the extent of it." We see no substantive difference between Jordan's use of force and appellant's.

We do not find persuasive the Commonwealth's reliance on Brown v. City of Danville, 44 Va. App. 586, 606 S.E.2d 523 (2004). In that case, when police officers responding to a domestic disturbance first arrived at the scene, Brown "was 'yelling and screaming' in such a manner as to prevent the officers from speaking with [the other party]." Id. at 597, 606 S.E.2d at 529. When officers tried to separate them, Brown continued to resist physically and verbally. This Court summarized the conduct supporting the conviction thusly:

> [O]nce Brown *began* to struggle with Officer Reid, this additional conduct constituted a use of "force" sufficient to violate subsection (b) of the Danville ordinance.[6] Specifically, Brown's struggle with Officer Reid was so violent that the officers had to mace Brown twice. Brown's kicking and squirming was aggressive enough to cause his pants to fall down around his knees. Brown slammed his

---

[6] This Court noted, "The language of the Danville ordinance closely resembles that of the Virginia statute, which is codified at Code § 18.2-460." Brown, 44 Va. App. at 597 n.4, 606 S.E.2d at 529 n.4.

own head down onto the police car with enough force to split his lip. Moreover, Officers Reid and Wilson needed the help of an additional officer before they were able to physically place Brown into a police car.

Id. at 598, 606 S.E.2d at 529 (emphasis added).

The conduct described in Brown involves the use of substantially more force than this case discloses.[7]

Bound by the parameter of force illustrated in Jordan, we conclude the evidence of force in this case is insufficient to sustain a felony conviction. That being said, we nonetheless conclude the evidence does show that appellant did "knowingly obstruct . . . a police office . . . in the performance of his duties," a misdemeanor pursuant to Code § 18.2-460(A), which is distinguished from Code § 18.2-460(C) by the absence of the necessity of proving force. Therefore, consistent with the Supreme Court's ruling in Commonwealth v. South, 272 Va. 1, 630 S.E.2d 318 (2006), we reverse appellant's felony conviction and remand for a new sentencing proceeding on the lesser-included misdemeanor.

Reversed and remanded.

---

[7] We recognize we upheld a conviction under Code § 18.2-460(C) for post-arrest actions in Craddock v. Commonwealth, 40 Va. App. 539, 580 S.E.2d 454 (2003). There the appellant engaged in substantially more force than did Jordan. He "began fighting" and "continued to fight the deputies for about three to four minutes" and was "kicking at the officers."