UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Beales and Decker
Argued by teleconference


STEPHON JERMAIN TURNER

                                        MEMORANDUM OPINION* BY
v.        Record No. 1675-13-1          JUDGE MARLA GRAFF DECKER
                                             JUNE 24, 2014
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Randolph T. West, Judge Designate

J. Ashton Wray, Jr. (Law Office of J. Ashton Wray, Jr., on briefs),
for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Stephon Jermain Turner (the appellant) was convicted in a bench trial of carrying a

concealed weapon in violation of Code § 18.2-308.  On appeal, he argues that the evidence is

insufficient to support the conviction.  We hold that the evidence is sufficient and affirm the

appellant's conviction.[1]

## I.  BACKGROUND

In the early morning hours of March 10, 2012, while on an unrelated call for service,

Sergeant Petrosky and other officers of the Newport News Police Department had a chance

encounter with the appellant and his cousin, Anthony Curtis.  Sergeant Petrosky, while

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commonwealth, on brief, argued that the appeal should be dismissed on procedural grounds associated with the assignment of error.  This Court ordered additional briefing.  Upon our consideration of the arguments of the parties, we deny the Commonwealth's request to dismiss the appeal.

attempting to drive away from the area, was unable to do so because Curtis stepped into the street, blocking Petrosky from passing. Curtis eventually moved out of the street, went to a parked blue Chevrolet, and opened the driver's door. When Curtis continued to behave belligerently, an officer on the scene arrested him for being drunk in public. At that time, the appellant was sitting in the front passenger's seat of the same parked vehicle, and an unidentified man was in the rear passenger's seat on the driver's side.

Sergeant Petrosky approached the driver's side of the vehicle to speak with the back-seat passenger and radioed for assistance with the front-seat passenger. Detective Gibson responded to the location and approached the front passenger's side of the car where the appellant was sitting. Gibson saw a partial box of .45 caliber ammunition lying open in the back seat. He asked the appellant to get out of the car.

Once the appellant was out of the car, Detective Gibson saw a Taurus .45 caliber handgun on the front bench seat to the left of where the appellant had been seated. A photograph showed that the handgun was partially concealed by a plastic bottle and pack of cigarettes but that a portion of the trigger guard and the barrel were clearly visible. Gibson also saw a second firearm, a Makarov 9 millimeter handgun, on the passenger's floorboard "in the area where [the appellant's] feet were positioned." A photo showed, and Gibson confirmed, that the 9 millimeter weapon on the floorboard was "just beyond the cusp of where the seat sticks out." That photo also showed that when viewed from the open passenger door, the 9 millimeter handgun was not obscured by the seat or anything else on the floorboard, which was bare except for the floor mat that lay beneath the gun.[2] Both weapons were loaded, and each had a round in the chamber.

---

[2] Gibson took photographs of the firearms just as he found them in the vehicle.

Underneath the front passenger's seat, Gibson found a black nylon holster with a slot for a spare magazine. Although the holster was in close proximity to the Makarov 9 millimeter handgun on the floorboard, it contained a loaded magazine for the Taurus .45 caliber handgun that was in the center of the front seat.[3] Gibson also found five "loose" .45 caliber cartridges inside the "open compartment" of the front passenger's door where the appellant was seated.[4]

The appellant presented evidence on his behalf. His cousin Curtis testified that the guns that were found in his car belonged to him. He said that when he was leaving a nearby club, he was intoxicated and "got into it with the officer" as he was attempting to enter his car. According to Curtis, the appellant had just gotten into the car when he arrived. Curtis also suggested that the appellant was not aware that the guns were in the car. Further, he claimed that his car's interior light was "kind of messed up" and that the light did not come on when the door was opened.[5] When asked about the holster beneath the passenger's seat, Curtis testified, "It goes to the .9 Makarov." On cross-examination, Curtis stated that he did not know the appellant was in his car and did not see him until he woke up in jail and saw him there. Curtis also testified that he was not aware that someone else was in the back seat of his car.

The appellant testified in his own defense. He told the court that he went to the club that night and when he was denied entrance into the establishment due to his age, he found his cousin's car, got into the vehicle, and waited for his cousin to return. He claimed that he was

---

[3] Testing by the Department of Forensic Science confirmed that the loaded magazine in the holster was for a .45 caliber weapon.

[4] Photographs of the holster and ammunition were also admitted into evidence.

[5] Detective Gibson, however, testified on cross-examination that with regard to taking the photos, he opened the car door "so the interior light would provide light." When pressed about the lighting, he said that he "believe[d]" that the interior light was operational because, although he was not "100 percent . . . sure," he remembered that the officers "[did not] have to use [their] flashlights completely."

drunk at that time. According to the appellant, when he opened the front passenger's door to get into the car, the interior light did not work. He denied seeing either the gun on the front seat or the gun on the front passenger's floorboard. The appellant claimed that he did not know that the firearms were in the car. He also testified that he did not know that anyone was in the back seat of the car.

The appellant moved to strike the evidence at the close of the Commonwealth's case and renewed that motion at the end of trial. He argued that his mere proximity to the guns and his presence in the car did not prove beyond a reasonable doubt that he constructively possessed the firearms. The trial court denied the motions to strike, convicted the appellant of carrying a concealed weapon, and sentenced him to twelve months in jail, with six months suspended, and a $200 fine.

## II. ANALYSIS

### A. Standard of Review

The appellant challenges the sufficiency of the evidence to prove that he constructively possessed either weapon.[6] The standard of review on appeal is well settled. This Court considers "the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). "Viewing the record through this evidentiary prism requires [this Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence].'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). We will

_____

[6] The record does not make clear which of the two weapons gave rise to the single conviction.

affirm the judgment of the trier of fact unless it is "plainly wrong or without evidence to support it." Bolden, 275 Va. at 148, 654 S.E.2d at 586.

Critical to our analysis is that this Court applies a very specific standard of review on appeal and does not substitute as the trier of fact, who was in the position to see and hear the witnesses as they testified, and to make credibility determinations. Consequently, decisions regarding the credibility of the witnesses and the weight of the evidence are matters left solely to the fact finder below. Redmond v. Commonwealth, 57 Va. App. 254, 265, 701 S.E.2d 81, 86 (2010). Further, "[i]t is firmly imbedded in the law of Virginia that the credibility of a witness who makes inconsistent statements on the stand is a question for the . . . trier of [fact] . . . ." Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989).

Additionally, when reviewing a case, this Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, the question is "'whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added) (quoting Jackson, 443 U.S. at 319). Summarized succinctly, it is the trier of fact, not the appellate court, that resolves conflicts in testimony, weighs the evidence, and draws reasonable inferences "'from basic facts to ultimate facts.'" Id. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

Finally, when a conviction is based on circumstantial evidence, "'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and [must] exclude every reasonable hypothesis of innocence.'" Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982) (quoting Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d

- 5 -

563, 567 (1976)).  Again, however, under longstanding appellate principles, whether an

"alternative hypothesis of innocence is reasonable" is a question of fact that will be reversed on

appeal only if plainly wrong.  Stevens v. Commonwealth, 38 Va. App. 528, 535, 567 S.E.2d 537,

540 (2002).  "Merely because [a] defendant's theory of the case differs from that taken by the

Commonwealth does not mean that every reasonable hypothesis consistent with his innocence

has not been excluded.  What weight should be given evidence [remains] a matter for the [fact

finder] to decide."  Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964).  The

appellate court asks only whether a reasonable finder of fact could have rejected the defense

theories and found the defendant guilty beyond a reasonable doubt.  Jordan v. Commonwealth,

273 Va. 639, 646, 643 S.E.2d 166, 170 (2007).

### B.  Law of Constructive Possession

The appellant was convicted based on the conclusion that he constructively possessed at

least one of the firearms found in Curtis' vehicle.[7]  "The principles that govern constructive

possession of illegal drugs also apply to constructive possession of a firearm."  Grier v.

Commonwealth, 35 Va. App. 560, 570, 546 S.E.2d 743, 747 (2001).  Thus, "[a] conviction for

the unlawful possession of a firearm can be supported exclusively by evidence of constructive

possession . . . ."  Bolden, 275 Va. at 148, 654 S.E.2d at 586.  Our Supreme Court has explained

that "'the issue [of what constitutes constructive possession] is largely a factual one.'"

Smallwood v. Commonwealth, 278 Va. 625, 630, 688 S.E.2d 154, 156 (2009) (alteration in

---

[7] Code § 18.2-308 proscribes "carr[ying] about [one's] person, hidden from common observation," any firearm.  Settled principles provide that the "about [one's] person" requirement is satisfied by evidence that the weapon is "close to the carrier," such as when it is beneath the floor mat of the automobile seat occupied by the defendant.  See Leith v. Commonwealth, 17 Va. App. 620, 622, 440 S.E.2d 152, 153 (1994).  We have held that the "carr[ying]" element is met by proof that the defendant constructively possessed the firearm.  See Bolden v. Commonwealth, 49 Va. App. 285, 292-94, 640 S.E.2d 526, 530-31 (2007), aff'd, 275 Va. 144, 147-49, 654 S.E.2d 584, 586-87 (2008).

original) (quoting <u>Ritter v. Commonwealth</u>, 210 Va. 732, 743, 173 S.E.2d 799, 807 (1970)).  The

standard of proof required is well settled:

> "[T]he Commonwealth must present evidence of acts, statements,
> or conduct by the defendant *or other facts and circumstances*
> proving that the defendant was aware of the presence and character
> of the firearm and that the firearm was subject to his dominion and
> control."  While the Commonwealth does not meet its burden of
> proof simply by showing the defendant's proximity to the firearm,
> it is a circumstance probative of possession and may be considered
> as a factor in determining whether the defendant possessed the
> firearm.

<u>Bolden</u>, 275 Va. at 148, 654 S.E.2d at 586 (emphasis added) (citations omitted) (quoting <u>Rawls</u>

<u>v. Commonwealth</u>, 272 Va. 334, 349, 634 S.E.2d 697, 705 (2006)).  Occupancy of the vehicle in

which a firearm is found, along with visibility of the firearm within that vehicle, are also relevant

factors for the trier of fact to consider when determining guilt.  <u>See</u> <u>Smallwood</u>, 278 Va. at 631,

688 S.E.2d at 157 (considering "plain view"); <u>Rawls</u>, 272 Va. at 350, 634 S.E.2d at 705

(considering occupancy).  Finally, the Commonwealth need not prove that the appellant's

possession of the firearm was exclusive possession.  It may be shared with others.  <u>Rawls</u>, 272

Va. at 350, 634 S.E.2d at 705.

### C.  Proof of Constructive Possession

The evidence was sufficient to support the conviction.  The record contains evidence of

constructive possession that the trier of fact was permitted to consider *in addition* to the

appellant's occupancy of the vehicle and proximity to the firearms located in the vehicle.  <u>See</u>

<u>Ervin v. Commonwealth</u>, 57 Va. App. 495, 506, 704 S.E.2d 135, 140 (2011) (*en banc*).  The

"combined force of these concurrent and related circumstances" supports the trial court's finding

of constructive possession.  <u>Id.</u>

The appellant was the front-seat passenger in a parked car owned by his cousin.  He had

been seated there for an unknown period of time.  A partially covered, but clearly identifiable,

loaded .45 caliber handgun was in the middle of the front bench seat just to the left of the appellant. A photograph documented the precise location of the gun as it was found, and it also showed that the trigger guard and barrel were clearly visible. A loaded 9 millimeter handgun was in open view on the front passenger's floorboard at the appellant's feet. A photograph confirmed that the 9 millimeter was fully visible "just beyond the cusp of where the seat sticks out" and "in the area where [the appellant's] feet were positioned." Under the appellant's seat was a holster for the .45 caliber weapon that contained a loaded magazine for that gun. Additionally, there were five .45 caliber cartridges inside the open compartment in the front passenger's door, immediately to the appellant's right. A partial box of .45 caliber ammunition lay open on the back bench seat. Photographs of these items were also admitted into evidence. Gibson testified that when he approached the car at the front passenger's door, he immediately noticed the box of ammunition on the back seat. As soon as the appellant got out of the car, Gibson saw both the partially concealed .45 caliber handgun on the seat and the 9 millimeter handgun in plain view on the front passenger's floorboard.

Based upon this evidence, we cannot say that the trial court was plainly wrong when it held that the appellant constructively possessed one or both of the handguns. The evidence before this Court supports the conclusion that the appellant was "aware of the presence and character" of the firearms and that they were "subject to his dominion and control." Rawls, 272 Va. at 349, 634 S.E.2d at 705. The appellant was virtually surrounded by weapons and ammunition. The loaded guns were poised for immediate use by the appellant, and their locations were entirely consistent with the activity prohibited under Code § 18.2-308. The size and composition of these loaded weapons, along with their proximity to the appellant and the fact that they were visible to him in his position in the car but not immediately visible to those outside the vehicle, support the conclusion that he was aware of their presence, knew that they

- 8 -

were firearms, and had ready access to them. Indeed, based on the location of the 9 millimeter handgun, the appellant would have had to step on it or over it when he got into the car. Compare Taylor v. State, 482 N.E.2d 259, 260-61 (Ind. 1985) (affirming the conviction of the front-seat passenger following a nighttime vehicle stop based on his constructive possession of firearms on the center front bench seat and front passenger's floorboard because the guns were "in easy reach and in plain view"), with Hancock v. Commonwealth, 21 Va. App. 466, 468-72, 465 S.E.2d 138, 140-42 (1995) (reversing the conviction of the back-seat passenger who was behind the driver following a vehicle stop where the firearm was "on the floorboard under the driver's seat" and the trial court used an incorrect legal standard when finding constructive possession).

The appellant's arguments simply do not support reversal. Whether the appellant's "hypothesis of innocence" was reasonable is a question of fact that was resolved against him by the trial court. See Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988). That decision is binding on appeal because, as already noted, based on the record before this Court, it was not plainly wrong or without evidence to support it. See Ervin, 57 Va. App. at 519, 704 S.E.2d at 147 (holding that "[t]he rejection of a hypothesis of innocence" is binding on appeal unless plainly wrong, "*even* if there is 'some evidence to support' the hypothesis of innocence" (quoting Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003))).

Despite Curtis' testimony and the appellant's efforts at trial to convince the court that: (1) the vehicle's interior light was not operational; (2) the appellant was not aware of the presence of the guns in the car; and (3) the guns belonged to Curtis and were possessed only by him, the evidence, viewed under the appropriate standard, does not support these claims.

First, although the appellant suggests that he could not have seen the guns because the encounter occurred at night and the vehicle's interior light was not working, the evidence,

viewed in the light most favorable to the Commonwealth, refutes this claim. Detective Gibson testified that when he took photos of the guns and other items inside the car, he "open[ed] the car door so the interior light would provide light." He further testified that he "believe[d]" that the interior light was operational because, although he was not "100 percent . . . sure," he recalled that the officers "[did not] have to use [their] flashlights completely." The trier of fact heard all of the testimony related to the interior lighting in the car. Gibson's testimony was sufficient for the trial court to conclude that the appellant saw the guns. See Swanson, 8 Va. App. at 378-79, 382 S.E.2d at 259; see also Harris v. Commonwealth, 206 Va. 882, 887, 147 S.E.2d 88, 92 (1966) (noting that proof beyond a reasonable doubt does not mean proof "beyond all doubt" and that "'[e]vidence is seldom sufficient to establish any fact . . . beyond *all* doubt'" (quoting Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949))). This conclusion was neither plainly wrong nor without evidence to support it.

Second, the trial court was permitted to conclude that the appellant was lying in order to conceal his guilt when he testified that he did not see the firearms. See, e.g., Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998); see also Tizon v. Commonwealth, 60 Va. App. 1, 12-13, 723 S.E.2d 260, 265 (2012) ("[E]ven if not '*inherently* incredible[,]' a defendant's exculpatory version of events need not be accepted by the factfinder." (quoting Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980))). Although the appellant was intoxicated, or under the influence of "something," at the time of his encounter with the police, the evidence refutes any suggestion that he was so intoxicated that he did not know the guns were present. Detective Gibson testified that the appellant was cooperative and responsive to instructions, did not make any furtive movements, and exercised his right to remain silent. Sergeant Petrosky confirmed that the appellant was

cooperative and responsive to commands. This evidence supported a finding that, if he alone did not possess the guns, he was not too impaired to recognize their presence.

Third, although Curtis claimed that both of the firearms belonged to him and that the appellant was not aware that they were in the car, the court was entitled to reject Curtis' testimony and to conclude from the remaining evidence that the appellant constructively possessed both firearms, either individually or jointly with Curtis. See, e.g., Redmond, 57 Va. App. at 265-66, 701 S.E.2d at 87. Curtis was the appellant's cousin, provided an inconsistent story, and was admittedly extremely intoxicated at the time of the encounter with police. The trial court was entitled to reject Curtis' testimony under these circumstances.

Further, Curtis testified that the holster beneath the passenger's seat that the appellant had occupied was for the 9 millimeter Makarov, which was found a few inches away from the holster on the front floorboard. Detective Gibson, however, testified both that the holster was for the .45 caliber Taurus found in the middle of the front bench seat and that it contained an extra fully loaded magazine of ammunition for the Taurus rather than the Makarov. Testing by the Department of Forensic Science confirmed that the loaded magazine in the holster was for a .45 caliber weapon. The trial court, as the finder of fact, was entitled to conclude that Detective Gibson testified accurately about the holster and magazine of .45 caliber ammunition and that Curtis either inexplicably intentionally lied about the holster or was not familiar enough with the guns to testify accurately about them. Either of these conclusions supported the finding that the firearms did not belong to Curtis and, instead, belonged to the appellant. This finding was further supported by the fact that the appellant was the only other person within arm's reach of the .45 caliber Taurus on the seat and the only one in close proximity to the 9 millimeter Makarov on the floor. In addition, the appellant was the only person within arm's reach of the

holster and extra magazine for the .45 caliber Taurus, as well as the extra .45 caliber ammunition in the door compartment, immediately to the appellant's right.

The record supports the trial court's finding that the appellant was aware of the nature and character of the firearms and that they were subject to his dominion and control, either individually or jointly with Curtis.

## III.  CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's finding that the appellant constructively possessed the two firearms.  Therefore, we affirm the conviction for carrying a concealed weapon.

<u>Affirmed.</u>