COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and Friedman
Argued at Lexington, Virginia

MY'LOVE FOREVER ROBINSON, A/K/A
  SONJA JANET ROBINSON

                                            MEMORANDUM OPINION* BY
v.      Record No. 1271-21-3                JUDGE ROBERT J. HUMPHREYS
                                            AUGUST 9, 2022

COMMONWEALTH OF VIRGINIA

        FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                        J. Fredrick Watson, Judge

        Jennifer T. Stanton, Senior Assistant Public Defender (Indigent
        Defense Commission, on briefs), for appellant.

        Robin M. Nagel, Assistant Attorney General (Jason S. Miyares,
        Attorney General, on briefs), for appellee.


        The circuit court convicted My'Love Forever Robinson for assault and battery of a law

enforcement officer and misdemeanor obstruction of justice. Robinson argues that the evidence is

insufficient to support her convictions. We find no merit to Robinson's arguments and affirm her

convictions.

                                      BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In

doing so, we discard any of Robinson's conflicting evidence, and regard as true all credible

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On March 27, 2020, City of Lynchburg Police Officers File and Dondero received a dispatch about an on-going fight at a bus stop. When they arrived at the bus stop, Robinson and Quacetta Christian were in a physical altercation and the two officers forcibly separated them. Officer File spoke with Robinson as she sat on a bench. When Officer File asked Robinson her name, she replied, "I'm not telling you." Officer File informed Robinson that if she did not identify herself, "she'd be going to jail." Robinson responded, "that's perfectly fucking fine. I don't have to tell you my name." As Officer File tried to speak with Christian and other witnesses, Robinson repeatedly interrupted them. Officer Dondero then moved Robinson to his patrol car a short distance away.

Officer Dondero described Robinson as "very disorderly" and noted that she "would not be quiet while Officer File tried to handle the investigation." After moving Robinson to the patrol vehicle, Officer Dondero held her arm. Robinson "was very agitated about [Officer Dondero] holding her arm and continued to tell [him] that [he] was assaulting her" and demanded that he release her. Robinson broke free from Officer Dondero's grasp, spun around, and slapped his arm away as he tried to restrain her. Robinson then stated that "if she was going to be searched by any officer, she would assault them." Before Officer Dondero could advise Officer File of Robinson's statement, Robinson kicked Officer File. Both officers then grabbed Robinson "trying to get control of her." Robinson resisted the officers by pulling away and swinging her legs several more times. With the assistance of a third officer, police forced Robinson against the patrol vehicle so Officer File could conduct the search. They placed Robinson into the car, where she kicked the back window of the patrol vehicle.

Once in the patrol car, Robinson repeatedly kicked "the cage window." When Officer Dondero reached into the car to stop her, Robinson tried to get out. She also flailed about, yelling and cursing at the officers. After more officers arrived, the police shackled Robinson and transported her to the police department.

Robinson acknowledged that she and Christian were involved in a physical altercation when the police arrived. She stated that when Officer Dondero held her arm, it "just felt like [her] arm was on fire" and it "was very painful." She claimed that she was merely trying to get more comfortable and denied hitting or fighting with Officer Dondero. She further testified that she did not intend to harm either officer and that the "only thing that was on [her] mind at that moment was just [her] frustrations of everything that was going on . . . and [she] just didn't want to be touched at that point."

The circuit court found Robinson not guilty of assaulting Officer Dondero but convicted her of assaulting Officer File. The circuit court held that Robinson "had stated an intent to assault the officer when she arrived" and "made an overt turn" before intentionally kicking Officer File. The circuit court further found that Robinson's behavior supported a conviction for obstruction of justice. This appeal followed.

## ANALYSIS

Robinson argues that the evidence is insufficient to support her convictions. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction,

'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

## I. Obstruction of Justice

Robinson asserts that although her "behavior was inconvenient and arguably made File's task more difficult, it did not in fact prevent [her] from performing [her] duties in arresting [Robinson] or investigating the matter they were called out for."

"If any person without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of [her] duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such" law-enforcement officer, she is guilty of a Class 1 misdemeanor. Code § 18.2-460(A). To constitute an obstruction of an officer in the performance of her duty, "there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing [her] duty, as to 'obstruct' ordinarily implies opposition or resistance by direct action . . . ." *Maldonado v. Commonwealth*, 70 Va. App. 554, 563 (2019) (quoting *Jordan v. Commonwealth*, 273 Va. 639, 648 (2007)). "It means to obstruct the officer [herself] not merely to oppose or impede the process with which the officer is armed." *Id.* (quoting *Jordan*, 273 Va. at 648). "Acts sufficient for an obstruction conviction 'may be either active or passive.'" *Id.* (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 255 (2016)).

In *Thorne*, 66 Va. App. at 250, this Court held that the evidence was sufficient to convict Thorne of obstruction of justice under Code § 18.2-460(A) where she repeatedly refused to comply with an officer's commands during a traffic stop. The officer explained to Thorne that he needed her to roll down her window four to six inches so that he could determine if the tint was "within legal standards" and so that "he could see who was in the back seat to ensure officer safety." *Id.* at 257. Thorne repeatedly refused to roll her window down, and she shouted at the

officer. *Id.* When the officer told her that he would charge her with obstruction, Thorne stated, "I know my rights! Do what you gotta do!" *Id.* Thorne did not comply until backup arrived for the officer—approximately nine minutes after the officer had made his first request for her to roll down her window. *Id.* On appeal, this Court held that "these facts demonstrate behavior on the part of the appellant that completely prevented the officer from performing his duty." *Id*. at 258. The Court reasoned that Thorne's "verbal responses to the officer not only constituted repeated refusals to roll down a window but also reflected her clear understanding that she was keeping him from performing his duty." *Id.*

Similarly, in *Molinet v. Commonwealth*, 65 Va. App. 572, 581 (2015), this Court affirmed Molinet's conviction for obstruction of justice under Code § 18.2-460(A) where Molinet interfered with officers' attempts to question three women. Molinet "failed to comply with numerous requests for [him] to back away to the curb" so that one of the officers "could maintain a secure perimeter" while another officer continued the investigation and the questioning of the women. *Id.* at 578. Molinet also stepped toward one of the officers "in an aggressive, threatening, and angry manner while shouting and cursing." *Id.* at 580. Molinet also further evinced his intent to commit obstruction when he testified at his trial that his "main goal [was] to make sure that [those women were] not going to jail or getting arrested." *Id.* at 581 (alterations in original).

Here, as in *Thorne* and *Molinet*, while Officer File investigated the incident by interviewing witnesses, Robinson repeatedly interrupted her, talked over the officer, and prevented her from speaking with people on the scene. Officer Dondero had to move Robinson from the area so Officer File could conduct her investigation, thus preventing Officer Dondero from assisting with the interviews. Further, when Officer File approached Robinson to search her, Robinson turned, kicked her, and then struggled with the officers, preventing Officer File

from accomplishing the search. Finally, Robinson resisted Dondero's attempts to stop her from kicking the police car window, and only after backup officers arrived and shackled her were the officers able to transport her to the police station. Thus, Robinson forcefully resisted the officers' commands and prevented the officers from accomplishing their duties. Accordingly, the evidence proved Robinson obstructed the officers.

## II. Assault and Battery of a Law Enforcement Officer

Robinson argues that the evidence failed to establish that she "had any willful intention to physically harm either officer." Instead, she asserts, she simply "was very upset from having already been assaulted by another (Christian) and her frustration about that situation" and did not want to be touched.

"[A]ny person [who] commits an assault or an assault and battery against another knowing or having reason to know that such other person is a . . . law-enforcement officer . . . , engaged in the performance of [her] public duties anywhere in the Commonwealth" is guilty of a felony. Code § 18.2-57(C). "The crime of assault and the crime of battery are independent criminal acts, although they are linked in Code § 18.2-57." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010). "To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'" *Id.* (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Id.* at 330 (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)).

"Whether a touching is a battery, depends on the intent of the actor, not on the force applied." *Adams*, 33 Va. App. at 469. "One cannot be convicted of assault and battery 'without an intention to do bodily harm—either an actual intention or an intention imputed by law.'" *Id.* at 468 (quoting *Davis v. Commonwealth*, 150 Va. 611, 617 (1928)).

"Proving intent by direct evidence often is impossible. Like any other element of a crime, it may be proved by circumstantial evidence, as long as such evidence excludes all reasonable hypotheses of innocence flowing from it." *Gilbert v. Commonwealth*, 45 Va. App. 67, 71 (2005) (quoting *Adams*, 33 Va. App. at 470). "Determining a defendant's intent 'is a factual question, which lies peculiarly within the province of the [fact finder].'" *Barnett v. Commonwealth*, 73 Va. App. 111, 120 (2021) (quoting *Hughes v. Commonwealth*, 18 Va. App. 510, 519 (1994) (*en banc*)). "[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Knight v. Commonwealth*, 61 Va. App. 148, 161 (2012) (quoting *Moody v. Commonwealth*, 28 Va. App. 702, 706-07 (1998)).

In this case, Robinson was argumentative and combative with the officers from the moment they arrived on the scene. After Robinson refused to identify herself, she cursed at Officer File and disrupted her investigation of the incident to such a degree that Officer Dondero had to remove Robinson from the area. After struggling with Officer Dondero, Robinson announced her specific intent to "assault" any officer who attempted to search her. When Officer File, the only female officer then on the scene, approached to conduct the search, Robinson immediately acted consistently with her stated intention and kicked Officer File. Robinson then resisted the officers' attempts to subdue her. Only after another officer arrived on the scene were the police able to conduct the search. Even after striking Officer File, Robinson continued to fight with the officers, requiring them to shackle her before she could be transported to the police station. Robinson's statements, behavior, and acts amply demonstrate that she acted with the requisite intent.

CONCLUSION

For the foregoing reasons, we find that the evidence was sufficient to prove Robinson's

guilt beyond a reasonable doubt, and we affirm her convictions.

*Affirmed.*