COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Fulton, Ortiz and Raphael
Argued at Norfolk, Virginia


TRAVOR LAMONT LUCAS

                                                      OPINION BY
v.        Record No. 0997-21-1              JUDGE JUNIUS P. FULTON, III
                                                    AUGUST 9, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
James C. Hawks, Judge

Samantha Offutt Thames, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Travor Lamont Lucas appeals his convictions, following a bench trial, of obstruction of

justice, possession of a firearm by a previously convicted violent felon, and possession of a

concealed weapon, in violation of Code §§ 18.2-460(A), 18.2-308.2(A), and 18.2-308(A)(i).  Lucas

asserts that the Chesapeake Circuit Court erred in finding the evidence sufficient to prove he

obstructed justice and possessed a concealed weapon.  For the following reasons, we affirm the

judgment of the trial court.

BACKGROUND[1]

On January 24, 2020, Chesapeake Police Officers Aaron Weeks and Cole Robinson initiated a traffic stop of a vehicle with defective equipment. The driver, Rodney Brooks, did not immediately stop and when Officer Weeks approached the vehicle, exhibited nervous behavior. Lucas was seated in the vehicle's passenger seat. During the stop, Officer Weeks learned that Brooks was not a licensed driver and returned to his vehicle to write a summons while Officer Robinson remained at the passenger side of the vehicle. Because of Brooks's behavior, Officer Weeks requested a K-9 unit.

Chesapeake K-9 Police Officer Casey Hills responded. When Officer Hills arrived, he explained to Brooks and Lucas that he was going to conduct an open-air sniff of the vehicle with his K-9 and asked the pair to step out of the vehicle. Officer Hills testified that he did not observe a firearm on Lucas's person when he exited the vehicle. When asked if he had any weapons on him, Lucas stated: "I'm good."

After the K-9 alerted to the presence of narcotics, Officers Hills and Weeks searched Brooks's vehicle. While the officers searched the truck, Officers Robinson and Dobrin, who arrived in the interim, remained with Lucas and Brooks. During the search, Officer Hills found a folded five-dollar bill containing suspected narcotics. Officer Hills again went to retrieve his K-9 and, upon his return, instructed Officers Robinson and Dobrin to handcuff and detain the two suspects.

When Officer Robinson attempted to place Lucas in handcuffs, Lucas "initially put his hands behind his back, and then he pulled away his left hand." In response, Officer Robinson said,

---

[1] "In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the light most favorable to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

"No. No. No, don't do it. Put your hands behind your back." Lucas then "checked off" of Officer Robinson and ran between the squad car and Brooks's vehicle and across the street. Officer Weeks explained that "checked off" meant Lucas "used his arm to push away from [Officer Robinson], to gain distance [as] he attempted to run across the street." Officer Robinson likewise defined "checked off" as Lucas "push[ing] [him] away slightly and then [taking] off running."

As Officers Weeks and Robinson tackled Lucas halfway across the street, Officer Hills observed a gun fly from the area of the scuffle and heard a distinct sound as it hit the road. Contemporaneous with the scuffle, Officer Hills can be heard saying on the body-worn camera audio: "you see the gun that flew out of his pants, right there!" Officer Hills testified that the gun "did not come from my right. It came from what was right in front of me." Officer Weeks did not see Lucas throw a gun or hear a gun slide across the asphalt as he tackled Lucas.

Officer Robinson heard a firearm slide across the asphalt as Officer Weeks took Lucas to the ground. He stated that the firearm was neither his nor Officer Weeks's. Officer Robinson recovered the firearm ten to fifteen feet away from where Lucas was tackled.

Each officer testified that he did not see a firearm on Lucas's person before his attempted flight and the scuffle. Officer Hills testified that his body-worn camera footage showed that no gun was in the street when he went to retrieve the K-9. Additionally, each officer testified that he did not see Lucas throw anything or make any movements consistent with throwing something while fleeing.

The Commonwealth offered into evidence certified copies of Lucas's prior violent felony convictions without objection.

After the Commonwealth rested, Lucas combined his motion to strike with his final argument and asserted that the evidence was insufficient to convict him of the charged offenses. The trial court overruled the motion to strike and made several factual findings before pronouncing

- 3 -

its verdict. The trial court found the officers' testimony to be credible, specifically noting that two officers did not see the firearm before Lucas fled and "independently say that they saw the gun hit the surface of the roadway and slide across the roadway when [Lucas] was being taken down." Thus, the court reasoned, the firearm was concealed on Lucas's person before his flight and was dislodged from its concealed position and flew across the road when he was tackled. The court also found that Lucas was not under arrest but was being detained for official police investigation when he fled. The trial court convicted Lucas of all three charges. This appeal followed.

STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017). "That responsibility lies with the fact finder

because '[t]his [C]ourt[,] sitting as an appellate court, and knowing nothing of the evidence or of the witness, except as it appears on the paper, . . . [is] incompetent to decide on the credibility of the testimony.'" *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (first three alterations in original) (quoting *Brown v. Commonwealth*, 29 Va. (2 Leigh) 769, 777 (1830)). Furthermore,

> [o]ur deference . . . is not limited to matters of witness credibility. We owe deference to the trial court's interpretation of all of the evidence, including video evidence that we are able to observe much as the trial court did. Such deference stems not from the trial court being in a superior position to view the video evidence but from the difference in our respective roles. As factfinder, a trial court views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did.

*Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). It is likewise within the province of the trier of fact to draw inferences from the proven evidence, and its inferences are binding so long as they are reasonable and justified. *See Commonwealth v. Hudson*, 265 Va. 505, 514 (2003).

ANALYSIS

I. Obstruction of Justice

Lucas argues that the evidence is insufficient to convict him of obstruction of justice because he simply ran away from the officers, asserting that his flight merely made the officer's task more difficult and it did not prevent them from performing their duty.[2]

A person is guilty of obstructing justice if he, "without just cause[,] knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties as such or fails or refuses without

---

[2] On brief, Lucas argues for the first time that the body camera footage shows that he ran away without applying force to the officers. However, in his combined motion to strike and closing argument before the trial court, Lucas conceded the push, arguing: "You have him pushing off from one officer while the officer is grabbing his hand. . . . It's natural. He's going to push away from here. He takes off running."

just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer."

Code § 18.2-460(A). To constitute an obstruction of an officer in the performance of his duty:

> there must be acts clearly indicating an intention on the part of the accused to prevent the officer from performing his duty, as to "obstruct" ordinarily implies opposition or resistance by direct action . . . . It means to obstruct the officer himself not merely to oppose or impede the process with which the officer is armed.

*Jordan v. Commonwealth*, 273 Va. 639, 648 (2007) (quoting *Jones v. Commonwealth*, 141 Va. 471, 479 (1925)).

"Acts sufficient for an obstruction conviction 'may be either active or passive.'" *Maldonado v. Commonwealth*, 70 Va. App. 554, 563 (2019) (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 255 (2016)). Summarily, "[a]s long as the obstructive behavior 'clearly indicat[es] an intention on the part of the accused to prevent the officer from performing his duty,' the evidence proves the offense." *Thorne*, 66 Va. App. at 256 (second alteration in original) (quoting *Jordan*, 273 Va. at 648). We have consistently held, however, that a conviction for obstruction of justice cannot be sustained merely on evidence that "a person fail[ed] to cooperate fully with an officer or when the person's conduct merely render[ed] the officer's task more difficult but [did] not impede or prevent the officer from performing that task." *Ruckman v. Commonwealth*, 28 Va. App. 428, 429 (1998). Consequently, a suspect's flight, alone, does not constitute obstruction of a law-enforcement officer. *See id.* at 429-30 ("For example, an accused's hiding or seeking 'to escape [an] officer merely by running away [is] not such an obstruction as the law contemplates.'" (alterations in original) (quoting *Jones*, 141 Va. at 478)); *see also Atkins v. Commonwealth*, 54 Va. App. 340, 342 (2009) (overturning a conviction for obstruction of justice where, when the police attempted to detain him, the defendant ran into the woods and hid for four hours before his capture).

Lucas asserts that the Supreme Court of Virginia's holding in *Jordan v. Commonwealth* supports overturning his conviction for obstruction of justice. 273 Va. 639. In that case, "Jordan 'stiffen[ed] his arms and began pulling away'" from the officer "'any time[] that he had the opportunity,'" he "walked slowly and pulled away" from the officer, and "stopped repeatedly, causing [the officer] to bump into him." *Id.* at 643-44 (first and second alterations in original). The Supreme Court held that although "Jordan was less than cooperative and his conduct rendered [the officer's] discharge of his duties more difficult, . . . [it] did not involve the use of force. Furthermore, it did not impede or prevent [the officer] from performing his tasks." *Id.* at 649. Thus, Jordan had not committed obstruction of justice. *Id.*

This case is distinguishable from *Jordan*. The evidence of the obstruction here was not that Lucas simply "[sought] to 'escape [an] officer by merely running away.'" *Atkins*, 54 Va. App. at 343 (second alteration in original) (quoting *Ruckman*, 28 Va. App. at 430). Rather, the evidence included testimony that Lucas "checked off" or pushed off of Officer Robinson as the officer attempted to handcuff him. This application of force against Officer Robinson removes Lucas's actions from the realm of "mere flight" and squarely provides sufficient evidence to support the conviction for obstruction of justice. Moreover, Lucas's conduct did more than make the discharge of Officer Robinson's duties more difficult; they in fact impeded Officer Robinson's ability to detain him and caused Officers Robinson and Weeks to engage in a scuffle with him in the street. Because the judgment of the trial court was not plainly wrong or without evidence to support it, we affirm Lucas's conviction for obstructing justice.

## II. Possession of a Firearm

On appeal, Lucas argues that the evidence is insufficient to prove he actually or constructively possessed a firearm, a necessary requirement for conviction of the two firearms charges. He argues that there are several reasonable hypotheses of innocence that exclude his

possession of the firearm. Lucas suggests that Brooks threw the gun from the truck or from the side of the road as Lucas fled. In the alternative, Lucas argues that the gun was already in the road and was disturbed when he stumbled upon it as the officers tackled him. Finally, Lucas argues that the Commonwealth failed to prove that the firearm was about his person and readily accessible, as was required to convict him of possession of a concealed weapon.

A person violates Code § 18.2-308.2(A) when, after having been convicted of a felony, he "knowingly and intentionally possess[es] or transport[s] any firearm or ammunition for a firearm." A person shall further be in violation of Code § 18.2-308(A)(i) if he "carries about his person, hidden from common observation, . . . any pistol." Possession can be proven "by showing either actual or constructive possession." *Barlow v. Commonwealth*, 26 Va. App. 421, 429 (1998). Actual possession is defined as the "physical occupancy or control over property." *Brown v. Commonwealth*, 37 Va. App. 507, 521 (2002) (quoting *Black's Law Dictionary* 1183 (7th ed. 1999)). To convict a defendant for constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the [firearm] and that it was subject to his dominion and control." *Powers v. Commonwealth*, 227 Va. 474, 476 (1984).

"Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony." *McCain v. Commonwealth*, 261 Va. 483, 493 (2001). This Court does not view circumstantial evidence in isolation. *Kelly v. Commonwealth*, 41 Va. App. 250, 259 (2003) (*en banc*). Rather, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Karnes v. Commonwealth*, 125 Va. 758, 764 (1919).

Each officer testified that he did not see a firearm in the road before Lucas fled. Officer Hills testified that the firearm came from the area in front of him where Lucas was subdued and not

from the area where Brooks was standing and that his review of his body camera footage corroborated his perception that a firearm was not in the road prior to Lucas's flight. Officer Robinson testified that the firearm recovered was neither his nor Officer Weeks's. Each officer testified that he did not observe a gun on Lucas's person before he fled. The evidence at trial further established that while Lucas was fleeing, no officer saw him throw anything or make any movement consistent with throwing something, though Officer Hills did excitedly utter that he observed a gun fly out of Lucas's pants. The trial court found the officers to be credible. The trial court inferred from this evidence that the gun was "dislodged from its concealed position [when Lucas was tackled] . . . and flew across the road." The trial court, as the fact finder, was entitled to draw these inferences. Likewise, the trial court properly considered Lucas's flight from law enforcement officers as evidence of his guilt and consciousness thereof. *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002) ("Evidence of flight from authorities that occurred days, or even months, after a crime is admissible, as '[a]ny flight at a time when it may be to avoid arrest, prosecution, or confinement tends to show a consciousness of guilt.'" (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 103 (1991))); *see also Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018) ("Flight following the commission of a crime is evidence of guilt." (quoting *Clagett v. Commonwealth*, 252 Va. 79, 93 (1996))).

When assessing whether the circumstantial evidence excludes a reasonable hypothesis of innocence, the Commonwealth, "need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017) (quoting *Hudson*, 265 Va. at 513). "[T]he factfinder determines

which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Id.* "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)).

The trial court rejected Lucas's hypothesis that Brooks threw the gun into the street either while he was still in the vehicle or when the officers were chasing Lucas. There was evidence in the record supporting the trial court's conclusions that Lucas, a previously convicted felon, possessed a firearm which, prior to being dislodged during his flight, was concealed on or about his person. Consequently, the ruling of the trial court was not plainly wrong and will not be disturbed.

CONCLUSION

The evidence at trial was sufficient to support the trial court's conclusions that Lucas obstructed justice and that he, a previously convicted felon, possessed a concealed firearm on his person before it was forcibly dislodged during his flight. Accordingly, we affirm the convictions.

*Affirmed*.